# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW J. OSTROWSKI AND PENNSYLVANIA CIVIL RIGHTS NETWORK,<br><br>                 Plaintiffs,<br>v.<br><br>PAUL KILLION, ROBERT FULTON, SUPREME COURT OF PENNSYLVANIA, SUPREME COURT DISCIPLINARY BOARD, ROBERT SNOOK, BRIAN CALI, CAPITAL POLICE OFFICER SLOAN, AND JOHN/JANE DOES,<br><br>                 Defendants. | MEMORANDUM OPINION GRANTING DEFENDANTS' MOTIONS TO DISMISS<br><br>Case Number: 14-1727 |

*Pro se* Plaintiffs Andrew J. Ostrowski and Pennsylvania Civil Rights Network brings this 42 U.S.C. Section 1983 action against the following Defendants: Chief Counsel for the Disciplinary Board Paul Killion; Staff Attorney for the Disciplinary Board Robert Fulton; Hearing Chairman for the Disciplinary Board Brian Cali; Tipstaff/Bailiff Deon Turner; Tipstaff/Bailiff Robert Snook; "Capitol Police Officer Sloan;" Supreme Court of Pennsylvania; Supreme Court Disciplinary Board; John/Jane Does; and "other unnamed defendants." (Doc. No. 1).

According to Ostrowski, Defendants violated his constitutional rights by intimidating him and removing him from the courtroom during the disciplinary hearings of attorney Don Bailey. Defendants have moved to dismiss the Complaint. (Docs. No. 11, 12, 14, 16). Having reviewed the parties' briefs together with all relevant materials and legal authorities, the Court GRANTS Defendants' motions to dismiss. The Court's reasoning follows:

1

I. LEGAL STANDARD FOR A MOTION TO DISMISS A PRO SE ACTION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. When considering a motion to dismiss, courts must accept all well-pleaded material allegations as true and construe them in the light most favorable to the plaintiff. *See id.; NL Indus. Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (conclusory allegations are "not entitled to be assumed true").

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)(internal citations omitted). Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").

II. BACKGROUND

A. Disciplinary Hearings

On August 12, 2011, Ostrowski—a suspended Pennsylvania attorney[1]—testified during a disciplinary hearing being held for attorney Don Bailey. (Doc. No. 1, at para. 5, 6). Ostrowski alleges that Robert Fulton, Staff Attorney for the Disciplinary Board, and Brian Cali, Hearing Chairman for the Disciplinary Board prevented Ostrowski from fully and effectively testifying by

---

[1] The Complaint does not explain the circumstances surrounding Ostrowski's suspension.

repeatedly and "rudely" cutting him off. (*Id.* at para 16).[2] Ostrowski further contends that Bailiff Robert Snook "stared and sneered" at Ostrowski. (*Id*. at para 18).[3]

After the August 2011 hearing, Ostrowski submitted a disciplinary complaint against Chief Counsel for the Disciplinary Board Paul Killion and Fulton "for their activities in connection with those proceedings, and [ ] expressed himself personally to all of the Middle District Judges about the Bailey disciplinary proceedings." (Doc. No. 1 at para. 26). Ostrowski also posted comments on the Pennsylvania Civil Rights Law Network regarding Bailey's disciplinary proceedings. (*Id*.). Ostrowski asserts that these activities angered several of the defendants and caused them to start "gunning" for him. (*Id.* at para. 28).

On June 20, 2012, a second disciplinary hearing was held regarding Bailey; Ostrowski attended the hearing. (Doc. No. 1 at para 30). According to Ostrowski, Bailiff Deon Turner "focused significantly on" Ostrowski during this hearing and "made one or two remarks or gestures" toward him. (*Id.* at para. 31).

Ostrowski attended Bailey's third hearing on September 5, 2012. According to Ostrowski, during the hearing Turner "leer[ed]" at him. (*Id*.). Ostrowski gave Turner an "exaggerated glare in response, attempting to non-verbally communicate his displeasure with being stared at[,] and intimidated[,] with repeated silly glares." (*Id.* at para 36). Immediately after Ostrowski gave Turner this look, Turner and Capital Police Officer Sloan placed "one or both" hands on Ostrowski and escorted him out of the courtroom. (Doc. No. 1 at para. 37). Neither Turner nor Sloan explained to Ostrowski why he was removed. Ostrowski believes that Turner and Sloan were

---

[2] According to the Complaint, "[t]his was carried out primarily by Defendants Fulton and Cali at the time, but is believed to have been part of a plan in which Killion was involved." (*Id*. at para 16). However, Ostrowski does not state exactly how Killion was "involved" in these actions.
[3] Ostrowski contends that another witness was intimidated as well.

3

instructed by Killion, Fulton, Cali, and several unnamed individuals to remove him from the hearing. He asserts that these defendants conspired against him in retaliation for the complaints he lodged.

B. Ostrowski's Complaint

On September 4, 2014, Ostrowski filed the present Complaint, which sets out the following counts under 42 U.S.C. Section 1983:

Count One alleges that "all Defendants, including as yet unnamed John and/or Jane Does, and covering the entire course of conduct involving the Bailey disciplinary proceedings, the Ostrowski proceedings, before those proceedings were filed, while they were being planned, and through the present, effected and continue to effect, a violation of Plaintiffs' First, Fourth, and Fourteenth Amendment rights along with similar rights of many, many others, mostly past and present clients of Don Bailey and the Plaintiff, all of whom are suffering ongoing violations of their rights and imminent future violations of their rights." (Doc. No. 1 at para 46).

Count Two alleges that Turner, Sloan, Killion, Cali, and Fulton effected an unlawful seizure on September 5, 2012, in violation of his First, Fourth, and Fourteenth Amendment rights. (*Id.* at para. 49).

Count Three alleges that Article 5, Section 10(c) of the Pennsylvania Supreme Court is unconstitutional because it vests the legislative, executive, and judicial functions in the Pennsylvania State Supreme Court, which Ostrowski asserts is a violation of the U.S. Constitution's separation of powers scheme. (*Id.* at para 52).

Count Four seeks declaratory and injunctive relief against the Pennsylvania Supreme Court, Supreme Court Disciplinary Board, Killion, Fulton, and Cali on the grounds that the "course

4

of conduct alleged as aforesaid constitutes a past and ongoing violation of the rights of the Plaintiffs and many others." (*Id.* at 54).

III. PRELIMINARY RULINGS

A. Plaintiff Pennsylvania Civil Rights Law Network Is Dismissed

According to Ostrowski, *pro se* Plaintiff Pennsylvania Civil Rights Law Network (the "Network") is an "organization" designed to prevent corruption. Doc. No. 1 at 5. "It has been the law for the better part of two centuries . . . that a [legal entity] may appear in the federal courts only through licensed counsel." *See Doughtery v. Snyder*, 469 F.App'x 71, 72-73 (3d Cir. 2012). Since the Network is not represented by counsel, the Court will dismiss it from this action.

B. Jane and John Doe Defendants Are Dismissed

Ostrowski has named Jane and John Does Defendants to this action. A plaintiff may name a fictitious defendant to an action, provided his allegations state a potential cause of action and he has demonstrated that he may be able to determine the defendant's identity during discovery. *Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 31–32 (3d Cir.1985). Ostrowski has failed to demonstrate any likelihood that he will be able to identify unnamed individuals against whom he can state a claim. Therefore, the Court will dismiss the Jane and John Doe Defendants.

IV. ALL CLAIMS FOR MONETARY DAMAGES ARE DISMISSED

A. Claims for Monetary Damages Against State Defendants and Individual Defendants in Official Capacities Are Dismissed

It is hornbook law that the Supreme Court, the Disciplinary Board, and each individual defendant acting in his official capacity are immune from suit for money damages under the Eleventh Amendment. Ostrowski has seemingly conceded this point. Doc. No. 19 at 5 ("There are no Eleventh Amendment or prosecutorial immunity bars to the claims against individual

5

defendants, as [Defendants] were acting solely in their private capacity."). More importantly, there can be no question that the relevant case law supports Defendants' position.

The Eleventh Amendment provides immunity to all state entities from suits for monetary damages in federal court.[4] *See Chilcott v. Erie Co. Domestic Relations*, 283 F. App'x 8, 10 (3d Cir. 2008); *see also Regents of the University of Calif. v. Doe*, 519 U.S. 425, 429-30 (1997). The Pennsylvania Supreme Court is an entity of the Unified Judicial System of Pennsylvania and, therefore, is deemed a state entity for Eleventh Amendment immunity purposes. *Callahan v. City of Philadelphia,* 207 F.3d 668, 672 (3d Cir.2000). Similarly, the Disciplinary Board—an agency of the Pennsylvania Unified Judicial System—is a state entity. *See, e.g., Mattas v. Supreme Court of Pa.,* 576 F.Supp. 1178, 1182 (W.D.Pa.1983); *Haagensen v. Supreme Court of Pennsylvania*, 651 F. Supp. 2d 422, 432 (W.D. Pa. 2009) *aff'd sub nom. Haagensen v. Supreme Court of Penn.*, 390 F. App'x 94 (3d Cir. 2010). Finally, it is well-established that immunity bars a suit for monetary damages against a state official acting in his official capacity. *See, e.g., Kentucky v. Graham,* 473 U.S. 159, 166 (1985). Accordingly, all claims for monetary damages except those raised against individual defendants acting in their individual capacity are barred by the Eleventh Amendment.

---

[4] While claims for monetary damages are barred, the Supreme Court in *Ex parte Young* "created an exception to th[e] general principle [of sovereign immunity] by asserting that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." *Green v. Monsour,* 474 U.S. 64, 68 (1985); *Ex parte Young,* 209 U.S. 123 (1908). Accordingly, "[t]he Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." *Green,* 474 U.S. at 68.

B. Claims for Monetary Damages Against Individual Defendants In Individual Capacities Are Dismissed

42 U.S.C. Section 1983 authorizes suits for money damages against officials acting wrongfully in their individual capacity. However, the Supreme Court has held that individual capacity claims are subject to two forms of immunity: absolute immunity; and qualified immunity. *See Burns v. Reed*, 500 U.S. 478, 484 (1991). The Court will first examine the absolute immunity issue before turning to qualified immunity.

   i.   **The Absolute Immunity Doctrine Bars Claims for Monetary Damages Against Defendants Killion, Fulton, and Cali**

Absolute immunity confers upon state officials total immunity from civil suit. *See Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). Whether a state official is entitled to absolute immunity depends on the scope of the official's duties and the nature of the function performed. *Id*. Killion is the Chief Counsel for the Disciplinary Board; Fulton is the Staff Attorney for the Disciplinary Board; and Cali is the Hearing Chairman for the Disciplinary Board. Defendants assert that Killion, Fulton, and Cali are entitled to absolute immunity because every allegation against them "relates solely to their role in the disciplinary process." Doc. No. 1 at 19. According to Defendants, their questioning of Ostrowski and consideration of Bailey's disciplinary proceedings were prosecutorial and quasi-judicial in nature.

Prosecutors enjoy absolute immunity for actions taken in their role as prosecutors. *Imbler,* 424 U.S. at 427–28. Prosecutorial immunity also extends to state officials and attorneys when they are performing "certain functions analogous to those of a prosecutor." *Butz v. Economou,* 438 U.S. 478, 515–16 (1978). The Supreme Court has held that the decisions to initiate and prosecute an administrative proceedings against an individual are "very much like the prosecutor's decision to initiate or move forward with a criminal prosecution." *Id.* at 515. Hearing officers and

counsel are deemed to be performing functions analogous to those of a prosecutor when they consider and prosecute disciplinary complaints and, therefore, are entitled to prosecutorial immunity. *See Kwasnik v. Leblon*, 228 F. App'x 238, 243-44 (3d Cir. 2007).

Judges also enjoy absolute immunity with respect to actions taken in their roles as judges. *Kwasnik v. LeBlon*, 228 F. App'x 238, 244 (3d Cir. 2007). Courts have expanded this doctrine to include quasi-judicial officials, i.e. "officials other than judges . . . whose judgments are functionally comparable to those of a judge." *Id.*; *Byers & Anderson, Inc.,* 508 U.S. 429, 436 (1993) (citations omitted). An official's actions are "comparable to those of a judge" when he "exercise[s] discretionary judgment as part of [his] function" in a proceeding. *Kwasnik*, 228 F.App'x at 244; *Byers & Anderson, Inc.*, 508 U.S. at 436; *Wager v. York Cnty. Domestic Relations*, 2010 WL 231129, at *8 (M.D. Pa. Jan. 14, 2010). The Third Circuit has held that disciplinary counsel and hearing committee members perform "discretionary acts" when they prosecute, consider, or rule on disciplinary actions and, therefore, are immune from suit under the quasi-judicial immunity doctrine. *See Addlespurger v. Corbett*, 461 F.App'x 82, 85 (3d Cir. 2012); *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009)(disciplinary counsel entitled to quasi-judicial immunity); *Kwasnik v. LeBlon*, 228 F.App'x 238, 244 (3d Cir. 2007)(committee members exercise discretion when considering complaints).

Ostrowski does not contest that the questioning of Ostrowski and consideration of Bailey's disciplinary proceeding were prosecutorial or quasi-judicial in nature. Instead, he counters that they acted outside the scope of their prosecutorial and quasi-judicial capacity by directing the bailiffs to remove him from the courtroom. According to Ostrowski, all three defendants—along with several Jane and John Does—"orchestrated" his removal from the courtroom in retaliation

for Ostrowski's protected speech and, therefore, were not acting as Hearing Committee members or counsel.

On a motion to dismiss, the Court must accept all well-pleaded allegations as true and construe them in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 681. However, conclusory allegations and blanket assertions are "not entitled to be assumed true." *Id.*; *NL Indus. Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Rather, the complaint must provide "enough fact[ual allegations] to raise a reasonable expectation that discovery will reveal evidence of [an] illegal agreement." *Twombly*, 550 U.S. at 556 (allegations must be reasonably specific in order to "nudge . . . claims across the line from conceivable to plausible"). "Put another way . . . [Federal Rule of Civil Procedure] 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). These requirements are especially important in the context of individual immunity. Because the purpose of immunity is to protect state officials from being pulled into court, a plaintiff may not overcome these requirements with conclusory allegations.

Here, Ostrowski offers nothing more in support of his allegations than his own speculation—and that of his attorney, Sam Stretton—that these defendants must have been "gunning" for him. Doc. No. 1 at 12. Ostrowski surmises that these defendants must have "orchestrated" these events. However, he does not allege that either he or Stretton have any evidence that Killion, Fulton, or Cali planned or directed his removal. Moreover, the few specific factual assertions in the Complaint directly contradict his speculation that his removal occurred because of these defendants since Ostrowski admits that he was removed from the hearing only after he "glared" at the bailiff. The Court finds that Ostrowski's Complaint fails to "nudge" his

9

assertions "across the line from conceivable to plausible" and are insufficient to state a claim. *Twombly*, 550 U.S. at 556; *see Iqbal,* 556 U.S. at 678 ("Factual allegations must be enough to raise a right to relief above the speculative.").

Accordingly, the Court will dismiss all claims against Killion, Fulton, and Cali.

### ii. The Qualified Immunity Doctrine Bars Claims for Monetary Damages Against Defendants Snook, Turner, and Sloan

Like absolute immunity, qualified immunity is also immunity from suit. *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). However, when analyzing qualified immunity, the court does not examine the individual's role but asks two different questions: 1) "whether the plaintiff has alleged the deprivation of an actual constitutional right at all;" and 2) "whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S. 603, 609 (1999).

#### a. Ostrowski Has Failed to State A Claim Against Snook

Ostrowski's Complaint does not state what actions Snook took to violate any specific constitutional rights. However, the Court, mindful of Ostrowski's *pro se* status, will liberally construe Ostrowski's Complaint to assert: Snook's "staring and sneering" at Ostrowski during the 2011 hearing violated his First Amendment rights.

Defendants assert that Snook is entitled to qualified immunity because it would not have been clear to a reasonable officer in Snook's position that "star[ing] and sneer[ing]" violated Ostrowski's constitutional rights. Ostrowski does not respond to this argument. The Court has found no case suggesting that an unpleasant facial expression amounts to a constitutional violation in this context. Moreover, this claim relates to the 2011 hearing and is barred by 42 U.S.C. Section 1983's two-year statute of limitations. *See Smith v. City of Pittsburgh*, 764 F.2d 188, 194 (3d Cir. 1985). Accordingly, the Court will dismiss all claims against Defendant Snook.

### b. Ostrowski Has Failed to State A Claim Against Turner and Sloan

#### i. *Plaintiff's Fourth Amendment Constitutional Claim*

Defendants assert that Turner and Sloan are entitled to qualified immunity with respect to Ostrowski's Fourth Amendment claim as it would not have been clear to a reasonable officer in their position that "placing one or both hands" on an individual and "escorting" him out of the courtroom constituted a "seizure." Doc. No. 14 at 28-29. A person has been seized "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554 (1980). In applying this test, courts have held that a person being escorted from a courthouse has not been seized because he is free to go anywhere else. *See, e.g., Sheppard v. Beerman*, 18 F.3d 147, 153 (2d Cir. 1994); *Stevens v.* Holder, 950 F.Supp. 2d 1282, 1290 (N.D. Ga. 2013). Here, Ostrowski's freedom of movement was limited only insomuch as he could not remain in the courtroom. *See Smith v. Dep't of General Services*, 181 F. App'x 327, 330 (3d Cir. 2006) (grabbing elbow while escorting individual out of room not a seizure). The Court finds that Turner's and Sloan's conduct did not constitute an unlawful seizure and, therefore, these defendants are entitled to qualified immunity.

#### ii. *Plaintiff's First Amendment Constitutional Claim*

Defendants further assert that Turner and Sloan are entitled to qualified immunity regarding the First Amendment claim. Ostrowski's First Amendment claim appears to be that he was removed from the hearing in retaliation for certain public statements he made about judges and officers involved in the Bailey disciplinary proceedings. Doc. No. 19 at 3. To state a First Amendment retaliation claim, a plaintiff must allege that the protected activity was a "substantial factor" motivating the defendant's decision to engage in the alleged retaliatory action. *See, e.g., Phyllis Hill v. City of Scranton,* 411 F.3d 118, 125 (3d Cir. 2005); *Hill v. Borough of Kutztown*,

455 F.3d 225, 241 (3d Cir. 2006). However, Ostrowski has not alleged that Turner or Sloan knew about his comments concerning the first disciplinary hearing or that they were motivated by any retaliatory animus. *See* Doc. No. 1 at 7-8 (Turner and Sloan are "sued reluctantly, as Plaintiffs believe[] they themselves are, in a sense, victims of the corrupt use of the Office of Disciplinary Counsel to carry out unlawful political agendas."). Rather, he surmises that "Killion, Fulton, Cali and, one or more of the John/Jane Does" must have directed Turner and Sloan to remove Ostrowski. Clearly, these allegations are not enough to support a First Amendment retaliation claim against Turner or Sloan. The Court will dismiss Ostrowski's claims against Turner and Sloan.

V. CLAIMS FOR INJUNCTIVE OR DECLARATORY RELIEF ARE DISMISSED

Ostrowski asserts that this Court should review the attorney disciplinary procedure established by the Pennsylvania Supreme Court and declare it unconstitutional. According to Ostrowski, the structure of the Pennsylvania state court disciplinary system violates the U.S. Constitution's "separation of powers." Doc. No. 1 at 19 ("the authority invested in the Pennsylvania Supreme Court in Article 5, Section 10 (c) of the Pennsylvania Constitution" violates the "federal constitutional separation of powers principals"). However, the separation of powers doctrine prevents branches of the *federal* government from encroaching on each other; it does not relate to provisions of a state's constitution. *Clinton v. Jones*, 520 U.S. 681, 691 (1997). Therefore, Ostrowski cannot state a claim based on a violation of this provision.

Moreover, even if this provision of the federal constitution did apply to the state constitutional structure, Ostrowski has failed to satisfy the applicable standing and jurisdictional requirements.

It appears that Ostrowski brings this claim on behalf of Bailey[5] and himself. Ostrowski does not have standing to raise a claim on behalf of Bailey. In order to establish standing, the plaintiff must demonstrate that he has "personally" suffered an injury in fact, i.e. an invasion of a legally protected interested that is concrete and particularized. *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 537 (3d Cir. 1994). Therefore, a person must assert his own legal interests, not those of "third parties." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985); *Wheeler v. Travelers Ins. Co.*, 22 F.3d at 537 (standing "requirements ensure that plaintiffs have a "personal stake" or "interest" in the outcome of the proceeding"). Accordingly, the Court will dismiss this claim as it relates to Bailey's rights,

Moreover, the Court does not have jurisdiction to consider this claim to the extent Ostrowski raises it on his own behalf. The only personal injury Ostrowski suffered as a result of this state disciplinary structure was the judicial order declaring him suspended. However, federal courts do not have jurisdiction to review the final judicial decisions of a state court. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Lance v. Dennis*, 546 U.S. 459, 463 (2006)("under what has come to be known as the *Rooker–Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments"). Ostrowski's suspension was imposed pursuant to the state disciplinary hearing board and any ruling on this matter would necessarily require the Court to either uphold or reverse that determination. Accordingly, the Court will dismiss this claim.

---

[5] In his Complaint, Ostrowski appears to assert that he is raising this argument on behalf of Bailey or other attorneys who are currently being harmed by this provision. (Doc. No. 1 at para 46) ("rights of many, many others, mostly past and present clients of Don Bailey").

VI.     CONCLUSION

For the reasons set forth in the opinion issued on this same day, Defendants' motions to dismiss will be GRANTED; Plaintiff(s) Complaint will be DISMISSED; and this case will be CLOSED.  An appropriate order follows.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE